Good morning, your honors. My name is Maria Harrigan. I represent Ms. McGee. Good morning, your honors. My name is Whitney Bond, and I represent the people of the state of Illinois. I'm sorry, your last name? Bond, B-O-N-D. What time will you meet me, Counselor? You asked how much time we would need? Oh, I'm sorry. I would need probably about five minutes for rebuttal. Okay. Counselor? Ten minutes, your honors. Okay. Thank you very much. This morning, your honors, I'm going to focus my argument on the first issue raised in my brief, and specifically the portion of that issue that Ms. McGee was prejudiced by her attorney's unreasonable decision to not request that the co-defendant's statements implicating her be redacted from her videotaped interrogation. Defense counsel's actions were unreasonable and any purported strategy was unsound here. The first thing counsel did was file a motion to suppress that whole statement, then he withdrew that motion. And although he was present when Jameel Brown, the co-defendant's attorney, moved to redact her co-defendant's of her from her videotaped statement, Joyce's counsel remained silent on that point. His strategy was to have the entire videotape introduced into trial and to call the third co-defendant, Elliot Peterson, on his client's behalf. When he realized that the Fifth Amendment and Mr. Peterson's lawyer would prevent him from doing that, he did not change his strategy, he did not join in the motion to redact, but continued with this same strategy, which was to have the entire videotape introduced into trial and to call the third co-defendant,  Now, the court maintains that defense counsel invited error by advising the court that it was acceptable for him to read the videotape into evidence. What do you say about that? How do we ignore that? Well, what I'm saying is that that was an unreasonable action by counsel. It made him some of the worst damaging evidence that can come in against a defendant. So you're saying this is one of those instances when we should not presume that this action by defense counsel was sound trial strategy? Correct. That's your position? That is our position. So we should just ignore the state's argument concerning invited error? Well, our contention to invited error is that the attorney was ineffective in inviting that error. That's how we are rebutting the state's contention that it's invited error. And the trials were severed here. The reason the trials were severed is because these people blamed each other. Counsel's actions in asking that this whole videotape be put before the trier of fact completely negated the reason for having separate trials here. If there was some purported strategy to let the judge hear all the video to show possibly that the statement or any of her answers to questions during the interrogation were coerced, counsel still could have done that with rejecting the most damaging implications of her by co-defendants. He also could have continued to pursue his motion to suppress, which he opted not to do. In addition, any admissions that the state characterizes as admissions by Ms. McGee on the videotape are basically nods, assents, and yeses to things that the police asked, her leading questions, with information in those questions provided by the co-defendants. She doesn't deny that she was present when the victim was shot. She does not. She does not deny that. That's pretty compelling evidence, isn't it? But she maintains throughout the interrogation that she did not, she was not part of any plan to rob any armored, steal any armored car, steal money from an armored car. That plan she heard about a couple weeks ago and she thought it was so crazy that she just thought they were all joking. But she did leave the scene of this murder with the victim's proceeds, correct? She wasn't. One of her, the co-defendants removed the man's wallet. They took the money from the wallet, went to a Walgreens, purchased a candy bar, got on a bus, went home, and then purchased the pizza. Now, she participated in all those activities. She did remain, but she said even in the statement that she remained with Elliot and Jameel because she was worried about her friend Jameel. She did not want Elliot to know where she lived, so she didn't want to go home. And we're not denying that she was present at the time this happened, but she had just seen somebody get shot, and so she basically followed the directions of Peterson, who told her what to do, told her where to get in the cab. And at that point, she was acting under shock, and she didn't want to leave her friend. So she, but she was, this is not evidence that she actually had active participation in this plan from her mouth. She assented to things that the police provided that came from co-defendants. Co-defendants are the people that placed her as part of the plan from the get-go, and this is where this information came from. Ms. Berrigan, was she aware that the, according to one of her versions, that the trio was to catch the cab and bail out? She said there was a possibility to run out on the fare. That's like, she did admit that that's something, but she did not, she denied that she was part of any kind of plan to rob, to steal the cab, to rob the armored car, to do anything like that, and she was completely taken aback by the shooting. And even at the time she was interrogated, she had no idea. She didn't even think this person died. He actually walked a little bit. She heard an ambulance. She had no idea that this cab driver was deceased. Ms. Berrigan, I'm sure you've heard this statement that the state uses all the time, in for a penny, in for a pound. And if she agreed to catch this cab and bail out, how does that correlate to this accountability conviction? Well, we're not making a reasonable doubt argument here. I'm arguing that the judge relied on statements that came in, in the videotaped interrogation from co-defendants, which placed her as part of this plan to take the cab and steal money from an armored car. And they said they're the ones that said she knew that Peterson had a gun. Okay. We're going to get back to that. Perhaps we'll let you finish. Go on. And so normally in a bench trial, we presume that the judge follows the law. In this case, when the judge made his findings, he said that Joyce volunteered information that only someone part of the criminal enterprise would have known. And that led him to believe that the plan went beyond running out on a cab fare. But a review of the videotape actually rebuts the fact that the judge found that she wasn't spoon-fed. Officers Tuhold and Harold actually confronted her numerous times with statements that Elliot Peterson said, that you knew there was a gun. Elliot Peterson and Jamil Brown said that you knew that the plan was to take the cab and steal the armored car. And she denied that in her statement. So the fact that the judge relied on that information shows that he relied on the hearsay statements from the co-defendants. And the other evidence here was not overwhelming. And, yes, she was with these people. We're not denying she was present. There is circumstantial evidence that she touched the phone. But she was not an active participant to this. This would have happened if she wasn't there. This was Peterson's idea. This is what Peterson wanted to do. So the fact that the evidence was not overwhelming and closely balanced and the judge relied on statements from co-defendants in finding Joyce McGee guilty, we think requires a new trial in this case. And we think because the attorney was ineffective for allowing these statements to come in through videotaped interrogation. You touched on what may be an enviable position, and that is the presumption that the trial court is afforded. We can't ignore the law. I understand. You have to help advance that argument. You're aware of the presumption that I'm talking about? Yes. Only competent? That's right. Only consider competent evidence. Yes. Again, Your Honors, it's our contention that when the judge made his findings, he indicated that he did not follow the law. Because when he said he relied on information that someone from the criminal enterprise could have only provided, that information came from co-defendants. The police never called in felony review. There was never a signed statement by Joyce McGee. This was an interrogation videotape where she denied things that the police confronted her with, which they admittedly gleaned from co-defendants. And by the judge saying that she provided information that only a person who's part of this plan would know, he implicitly is relying on the co-defendant statements. Because that's where this information came from. The argument is one issue, ineffective assistance counsel. That's what I'm focusing on here in the oral argument today. We are resting on the brief on the trial error issue. I realize there's the trial judge, the defense attorney is the one who said he wanted the videotape in. So we're focusing on the ineffective assistance of counsel at oral argument. If you understand any further questions, we request either a new trial or a reduction in sentence pursuant to our second argument. Thank you.  Good morning, Your Honors. Again, my name is Whitney Bond. The defendant argues ineffective assistance of counsel with regard to the admission of the entirety of the defendant's videotape statement. People contend that because this error was invited by defense counsel, who requested that the entire video be shown, she's stopped from arguing this invited error on appeal. What this case really boils down to now is an issue of trial strategy. And the people contend that trial strategy was evident from the record. From trial counsel's opening statement all the way through closing argument and the trial court's findings, we laid a road map. Beginning with counsel's opening statement, he made clear that his strategy was to show that the defendant was not a willing or knowing participant in this crime. And the way that he was able to do that was by requesting that the entire videotape be shown. All seven hours of that videotape, at which he actually termed in his closing argument, was the very important video. And in that video, what he was able to do was benefit his client in two ways. One, he was able to show the trial court what he pointed out was over 40 plus denials of her involvement in this crime. And how that benefited her was that the trial court was able to see her testify to her lack of participation or her lack of knowledge without actually having to put her on the stand and be subjected to cross-examination by the state. Secondly, defense counsel also was able to show to the trial court or provide to the trial court an issue of voluntariness. He was able to show in the seven hours how this defendant went from blaming people that had nothing to do with the crime and weren't there all the way through to when she eventually confessed to her complicity in this crime. At that point, and he points out in closing argument, he was able to show, look, she was crying. These investigators were mean to her. They were endearing themselves to her by calling her honey. They were trying to confuse her. They were providing topics to her. Again, the benefit here by showing that entire videotape to the trial court is that the trial court was allowed to look at it and determine voluntariness for itself. And in fact, the trial court recognized that this was defense counsel's strategy when he made his findings in closing argument and specifically pointed out that he understood that the defense counsel's decision to withdraw the motion to suppress statements after discussing it with his client was so that he could determine the voluntariness simultaneously at trial. This is obviously a good trial strategy here because what do we have? What did defense counsel have? He had the entirety of his client's guilt resting on a videotape. There was nothing that he could do about her admitting her guilt on that videotape because essentially at the end of the day, she did admit. She did know about the plan. She did know about the gun. She did know there was a shooting. She did know that they left together, that she did buy the Butterfinger. She did buy the pizza. She was there. Wouldn't the better trial strategy have been just to limit the information that was admitted at trial to those things that she admitted and to exclude the statements made by her co-defendants and to exclude the opinion testimony, alleged opinion testimony of the police officers? Wouldn't that have been the better strategy? If you had done that, if trial counsel asked that all the opinion testimony and I believe there's at least three instances where the investigator said, we don't believe you, and there was four incidents where they said, you know what, your co-defendant says this. Why don't you tell us the truth? Those happen not in the beginning. They happen kind of in the middle of this seven-hour lengthy interrogation. Had trial counsel asked that those portions be redacted, all that the trial court would be left with to see is the beginning where she denies that she's involved at all and that Pee Wee and J-Mo are the shooters and the very end where she admits that she was part of it. And in addition. So would that have been sufficient to convict? Yes. So would that have been the better trial strategy? It would have been. And she maintains that defense counsel was simply ineffective by employing this strategy. And she's saying we shouldn't be a stop for making that argument this morning. I understand. And what I would submit to this court is that when you look at those specific statements that co-defendants allegedly told investigators, investigators told her, you knew about the gun, you knew about the plan. She never admits to those. Not one time in any of those statements does she ever admit, oh, yeah, you're right. She's not confronted. Elliot told us that you knew about the gun. She doesn't say that. In fact, there's at one point on the statement in People's Exhibit No. 100 where Peterson says she knew that he had a gun. She says she didn't know. There's another statement in People's Exhibit No. 100 where she's confronted that Peterson says that he has the gun in the cab. She says, I swear on my life, I didn't know there was a gun in the cab. Not one of those incidents does she say, yes, when she's confronted. Yes, I knew that. Yes, I knew that. That's important for the trial court to see. Because the trial court is seeing that there's co-defendants. The trial court knows there's co-defendants in this case. The trial court is seeing that there's co-defendants. She's being confronted with co-defendant statements, and she's still denying that that's what she knew. But it really boils down to the strategy that was employed in this case. She said that this refusal by defense counsel to employ the rules of evidence and to exclude inadmissible evidence as evidence of incompetence of counsel or ineffective assistance of counsel. And you say no. No, because it's not inadmissible evidence. What essentially they're saying here is that it should be inadmissible because these are co-defendants' hearsay statements, when in fact these aren't hearsay statements. They're not being offered for the truth of the matter asserted. There's no confrontation clause issue. There's no coffered. They're not being used to connect the defendant to the crime. They're simply being used as their effect on the listener, which at this point is the defendant. I mean, how does she react? And the trial court sees it in the video. He's able to see it. If it was redacted, he wouldn't be able to see how she reacts, how she conducts herself in the face of what trial counsel called intense interrogation. I think also, too, when you're looking at trial strategy, as Justice Sloan pointed out, there's an issue as to prejudice, and the people contend that there was no prejudice here. There's absolutely nothing in this record where it could be said that either the trial court or the people relied upon these non-hearsay statements as substantive evidence. At no time did the people argue in closing argument that the reason why this defendant is guilty is because investigators said on a videotape that her co-defendants knew more than she said she knew. And additionally, the trial court never relied on any of those statements as substantive evidence of her guilt. As was already pointed out, this is true when a trial court is presumed to only consider competent evidence. There was a point that the justices were making with opposing counsel today that the trial court seemed to have relied on these co-defendant statements because he pointed out the things in his trial court's ruling that he wouldn't have known had these co-defendant statements not been brought out by investigators. But if you look at the record, that's simply not true. In her statements themselves, she points out specific things that she would never have known that had nothing to do with the co-defendants had she not been there. And specifically, some examples would be she knew that the cab driver had an accent. She knew that the cab driver wore glasses. She knew that the cab's color was green. She knew that the cab driver had been robbed. None of those statements came from anything that investigators posited to her that co-defendants told them. The trial court did not rely on these co-defendants' statements that were said to investigators. Instead, what the trial court was able to rely on was the end of this defendant's confession where she stated she did indeed know about this plan one to two weeks prior. She saw the gun in Peterson's apartment in the closet. She knew about the armored car heist idea that we need to rob an armored car to get money. Whether or not she thought that it was crazy at the time, she still knew it, and it still became fruition. I'm sorry. She discounted it as a joke. That's her confession is that she discounted it as a joke, but she still was with the co-defendants the night before when she saw the gun. She was with them that day. Let's assume she was aware of a plan to rob an armored car. Does that make her accountable? Knowledge of it? No. What makes her accountable is that she was there with co-defendants when they used her phone to call the cab company two times, when she was able to give them an address for a cab to pick them up. She's accountable when she sees the gun with Peterson in the cab and decides that's when she's going to tell the cab driver where to drive to. She's accountable when the shooting is over and she helps dispose of the victim's belongings, and she's accountable when she effectuates her escape with them, never calling help and instead spending his money on candy bars and pizza. Defendant argues that the most damaging evidence in this case comes from these co-defendant statements that were allegedly made to investigators and investigators told her. People contend the most damaging part of this case was when she admitted to her complicity in this crime and that when faced with that, defense counsel had no choice in looking at a confession, but to do the best that he could with such damning evidence. It's people's position that it was trial strategy to hear the entirety of that confession without redaction, so the trial court was able to judge her denials, her involvement in this crime without putting her on the stand, as well as the voluntariness of the statement. And for these reasons, if there are no other questions, and for those raised in our brief, we ask that you affirm the defendant's conviction and sentence. Just a moment. Sure. Ms. Harrigan, there is a... Or respond. I believe in your brief, however, Ms. Harrigan, you refer to the trial judge's findings. I can't find it in the brief. Oh, it's on page 21 to 22. Okay. Wait. Where he says he has meticulously reviewed. Whose brief is that? Oh. That very word. I quote, I believe it's the state's brief. I can't remember which brief it was. But the very word. Oh, wait. You know what? Maybe it's in the state. The trial court says that he had meticulously viewed seven hours of the tape. Okay. Perhaps maybe page 16 of our brief in a statement of facts. Is that what you're looking for? I don't remember using the word meticulous. That's why I'm having a hard time finding it. If it is in our brief. Early on, you suggested that Ms. McGee be stopped from arguing invited error. As stopped from arguing this as error because it was invited. Okay. Even if that's true, and I think that Justice McGill has gone to the heart of it, how does that still does not address the question of ineffective assistance of counsel? You alluded to the trial judge stating that he would have denied the motion. While we all agree that trial judges presume to consider only competent evidence and testimony, should that presumption also extend to his knowing what would have been offered in the motion to suppress? How can you make that statement without knowing what would have been offered? I would think, first of all, it would have to be obviously a case-by-case basis. And if we're discussing that here, I mean, what would be offered is the confession. What the trial court would have heard in a motion to suppress is, I mean, twofold. It could have been her getting on the stand and saying, hey, I was coerced and this is what happened to me. Or it could be show the confession and determine the voluntariness at that point. I think what the trial court did here was recognize that showing the confession at either motion to suppress or the trial would have rendered the same result. And he specifically said, I find that it was voluntary. And he goes into a litany of reasons why he found that it was voluntary. I understand where Justice Savella is coming from as far as the invited air, the ineffective assistance of counsel. But this was a strategic decision, and it was a brilliant decision. I mean, when he's faced with having nothing but a confession, how do you get around that? And this was his option, and this is what he did. Co-counsel moved to have certain portions of their respective video redacted. That was granted without objection. Correct. But Mr. McGee's attorney was brilliant by inviting all seven hours of the tape to come in. Simply because his co-counsel did something that would benefit his co-counsel doesn't necessarily mean that they're not the same videotape. I mean, it's not that Co-Defendant Brown's videotape is not the same as Defendant McGee's videotape. So what's on that videotape could have been redacted or requested to be redacted by co-counsel for a very different reason. What this defense counsel did was look at it and see that I have a client who's admitted to guilt, plain and simple. But how she got there, the journey is as important as the destination. And what he needed the court to do was to be able to see her repeatedly saying, I didn't know, this plan was crazy, I wasn't willing, I wasn't throughout, without putting her on the stand and subjecting her to a cross-examination. Yes, counsel was there, but we would submit that counsel had very different reasons, perhaps, than Co-Defendant Brown. Or excuse me, yes, Co-Defendant Brown. I think it would have been wise to pursue the motion to suppress and introduce the videotapes there and then object when you get to the trial. That's a good question. The only thing I can rely upon is the record. I mean, arguing an effective sense of counsel is difficult for people because we're trying to invade the mind of what defense counsel was doing on pretty much the opposite side of the aisle for us. Here, the only thing that we can do is we can look at the record, and the trial strategy is clear throughout the record. So the record says to us that the trial court recognized that defense counsel and his client got together and decided to withdraw the motion to suppress for whatever reason. So perhaps there was some – oh, I'm sorry, go ahead, I didn't mean to interrupt. The component is that that strategy was so unreasonable that it just constitutes ineffective assistance of counsel. Well, ineffective assistance of counsel is decided under two prongs. One, deficiency. Two, prejudice. Obviously, people believe that counsel was not deficient, but we still have the prejudice prong. And defendant can't rise to the level of prejudice here when everything that this trial court found her guilty of came from her own mouth. And in fact, when we talk about her confessions, there was some mention of part of her confession being noncommittal in that they were a series of mm-hmms and nodding of the head. But when in fact there was really only two questions in People's Exhibit No. 102 where she nods her head and says mm-hmm, and that's two questions of – she was asked whether she knew this plan was to take the cab and use it to rob the armored car and that she was going to participate in that plan. Everything else that trial court was able to find her guilty of was her own words in addition to these very affirmative yeses, yes, mm-hmm, mm-hmm. Defense counsel, or excuse me, the defendant in this case, if we're deciding deficiency and really have to decide prejudice, there wasn't a deficiency and she certainly wasn't prejudiced. But you must confess that not following the rules of evidence, some inadmissible evidence was admitted by failing to object to the admission of the videotape. It's only inadmissible if it was hearsay, and it's not hearsay. Not her statements. No, of course not. The co-defendants. The statements were admitted to the co-defendants. Right. Those were not – they were never – the people never asked for those statements to be admitted into evidence. The defendant did. They asked for the videotape. Right. Which included. Right, of course. We asked for her admission. We are not – nobody ever specifically asked for hearsay statements to be admitted into evidence. Those were not hearsay statements. Those were not offered for the truth of the matter asserted, and therefore that – They were just offered to show what the defendants told the police. No, they were offered to show how or why the defendant – in this case, not co-defendants – the defendant was answering the questions the way she was answering them, and how she essentially was part of this crime. Anything else? Thank you. Thank you. Rebuttal. Just a few points, Your Honors. The strategy here was anything but brilliant. It was completely unsound. If you're going to tell this Court why it is that you should not be a stop for making the argument, since defense counsel agreed to the admission of the tapes, why shouldn't you be a stop? Because defense counsel was ineffective in asking for the admission of the tapes. It was an unreasonable strategy at trial to ask for the admission of an entire videotape. He could have done several things if he wanted to show that the statement was involuntary. He could have pursued the motion to suppress, which we actually don't know what could have come out of hearing a motion to suppress. We know that there's the videotape. We don't know what testimony would have been there. So the judge saying he would have denied that motion, all he has is the videotape. He doesn't know what other evidence might have been presented at a pretrial hearing. So the attorney could have done that. The attorney could have asked, as his co-counsel's attorney did, to redact the incriminating statements. My opponent indicates that because Joyce denied being part of the plan when she was confronted with the co-defendant statements, that actually played into the defense counsel strategy. But actually, that just shows that the only incriminating evidence putting her with these people in this plan came from her co-defendant statements. Counsel argues that this wasn't hearsay because they weren't introduced for the truth of the matter, but they were relied on that way by the trial judge when he said that the person provided only information that somebody who was part of the criminal enterprise could provide. Counsel says that she said that the cab driver had an accent, the cab was green, that he wore glasses, but we're not denying she was in the cab. Those aren't incriminating admissions. Those are things that happened that she was in the cab. We all admit she's in the cab. But the actual incriminating admissions that put her in this plan came from the co-defendant statements, which the judge must have relied on when he made that statement in his findings. So if your honors have no further questions, we request a new trial and or a reduction in sentence. Thank you. Thank you very much. Thank you. We'll take this matter under advisement.